ATTORNEY GENERAL HENRY HAS REFERRED TO YOUR LETTER REGARDING LAND SURVEYING TO ME FOR A RESPONSE. AS I UNDERSTAND IT, YOU WANT TO KNOW WHETHER CERTAIN PRACTICES CONSTITUTE "THE PRACTICE OF LAND SURVEYING UNDER 59 O.S. 475.2(7), PART OF THE ENGINEERS AND LAND SURVEYORS ACT. YOU LIST A NUMBER OF THE ACTIVITIES WITH WHICH YOU ARE CONCERNED, INCLUDING THE STAKING OF CONSTRUCTION PROJECTS, AERIAL MAPPING, MINING SURVEYING, GEODETIC SURVEYING, CADASTRAL SURVEYING , AND MICROWAVE PATH SURVEYING. YOU EXPLAIN THAT THE LIST YOU HAVE PROVIDED IS NOT MEANT TO BE EXCLUSIVE BUT RATHER INDICATES ONLY SOME OF THE ACTIVITIES WITH WHICH YOU ARE CONCERNED. YOU ADD THAT YOU WOULD LIKE TO KNOW WHAT GENERAL PRINCIPLES SHOULD BE APPLIED IN DETERMINING WHETHER A PARTICULAR ACTIVITY CONSTITUTES THE PRACTICE OF LAND SURVEYING. YOU SHOULD UNDERSTAND THAT WHAT FOLLOWS IS THE OPINION OF THE UNDERSIGNED ASSISTANT ATTORNEY GENERAL AND THAT THIS IS NOT AN OFFICIAL OPINION OF THE ATTORNEY GENERAL HIMSELF.
AS YOU HAVE NOTED, YOUR QUESTION REQUIRES AN INTERPRETATION OF 59 O.S. 475.2(7), WHICH STATES: "THE TERM 'PRACTICE OF LAND SURVEYING', AS USED IN THIS ACT, SHALL MEAN ANY SERVICE OR WORK, THE ADEQUATE PERFORMANCE OF WHICH INVOLVES THE APPLICATION OF SPECIAL KNOWLEDGE OF THE PRINCIPLES OF MATHEMATICS, THE RELATED PHYSICAL AND APPLIED SCIENCES AND THE RELEVANT REQUIREMENTS OF LAW FOR ADEQUATE EVIDENCE TO THE ACT OF MEASURING AND LOCATING LINES, ANGLES, ELEVATIONS, NATURAL AND MANMADE FEATURES IN THE AIR, ON THE SURFACE OF THE EARTH, WITHIN UNDERGROUND WORKINGS AND ON THE BEDS OF BODIES OF WATER FOR THE PURPOSE OF DETERMINING AREAS AND VOLUMES, FOR THE MONUMENTING OF PROPERTY AND LAND BOUNDARIES AND FOR THE PLATTING AND LAYOUT OF LANDS AND SUBDIVISIONS THEREOF, INCLUDING THE TOPOGRAPHY, AND FOR THE PREPARATION AND PERPETUATION OF MAPS, RECORD PLATS, FIELD NOTE RECORDS AND PROPERTY DESCRIPTIONS THAT REPRESENT THESE SURVEYS."
IN ANALYZING STATUTES, SEVERAL INTERPRETIVE RULES HAVE EVOLVED. THE FUNDAMENTAL RULE IS TO DETERMINE THE INTENT OF THE LEGISLATURE FROM THE WORDING OF THE STATUTE. HUMPHREY V. DENNEY, 757 P.2D 833 (OKLA. 1988); FULLER V. ODOM, 741 P.2D 449 (OKLA. 1987). IN THE ABSENCE OF SPECIFIC DEFINITIONS SET FORTH IN A STATUTE, THE WORDS USED ARE TO BE GIVEN THEIR ORDINARY, EVERYDAY MEANINGS. MATTER OF INCOME TAX PROTEST OF ASHLAND EXPLORATION. INC., 751 P.2D 1070 (OKLA. 1988); HESS V. EXCISE BOARD OF MCCURTAIN COUNTY, 698 P.2D 930 (OKLA. 1985). STATUTES SHOULD BE CONSTRUED AS WHOLE, SO TO GIVE EFFECT, IF POSSIBLE, TO ALL OF THEIR PROVISIONS. COWART V. PIPER AIRCRAFT CORP., 665 P.2D 315 (OKLA. 1983); WOOD V. INDEPENDENT SCHOOL DISTRICT NO. 141 OF POTTAWATOMIE COUNTY, 661 P.2D 892 (OKLA. 1983).
ON THE BASIS OF THESE GENERAL PRINCIPLES, I THINK THAT THE BEST APPROACH IN INTERPRETING THE TERM "PRACTICE OF LAND SURVEYING" IN 59 O.S. 475.2(7) IS TO DIVIDE THE RATHER LENGTHY DEFINITION THERE SET FORTH INTO THREE COMPONENTS. UNDER THIS APPROACH, "THE PRACTICE OF LAND SURVEYING" REFERS TO ACTIVITIES WHICH INVOLVE ALL THREE OF THE FOLLOWING:
 (1) APPLICATION OF THE PRINCIPLES OF MATHEMATICS, THE RELATED PHYSICAL AND APPLIED SCIENCES, AND THE RELEVANT REQUIREMENTS OF LAW FOR ADEQUATE EVIDENCE.
 (2) TO THE ACT OF LOCATING LINES, ANGLES, ELEVATIONS, NATURAL AND MANMADE FEATURES IN THE AIR, ON THE SURFACE OF THE EARTH, WITHIN UNDERGROUND WORKINGS AND ON BEDS OF BODIES OF WATER;
 (3) FOR THE PURPOSE OF DETERMINING AREAS AND VOLUMES, FOR THE MONUMENTING OF PROPERTY AND LAND BOUNDARIES, AND FOR THE PLATTING AND LAYOUT OF LANDS AND SUBDIVISIONS (INCLUDING TOPOGRAPHY), AND FOR THE PREPARATION AND PERPETUATION OF MAPS, RECORD PLATS, FIELD NOTE RECORDS, AND PROPERTY DESCRIPTIONS THAT REPRESENT THESE SURVEYS.
THEREFORE, UNDER 59 O.S. 475.2(7), I THINK THAT A PARTICULAR ACTIVITY CONSTITUTES THE PRACTICE OF LAND SURVEYING ONLY IF IT INVOLVES ALL THREE OF THESE COMPONENTS. ACCORDINGLY, THE DIFFERENT KINDS OF SURVEYING ACTIVITIES THAT YOU HAVE LISTED SHOULD BE INDIVIDUALLY SCRUTINIZED IN ORDER TO DETERMINE WHETHER THEY INVOLVE ALL THREE COMPONENTS.
UNFORTUNATELY, I HAVE UNEARTHED NO OKLAHOMA COURT DECISIONS OR PRIOR ATTORNEY GENERAL OPINIONS THAT ILLUSTRATE HOW THIS COMPONENT APPROACH TO 59 O.S. 475.2(7), IS APPLIED TO PARTICULAR LAND SURVEYING PRACTICES. NEVERTHELESS, THERE ARE A NUMBER OF CASES FROM OTHER JURISDICTIONS THAT DO DISCUSS THE PRACTICE OF LAND SURVEYING. ALTHOUGH THESE CASES WERE DECIDED UNDER DIFFERENT DEFINITIONAL STATUTES, I THINK THAT THEY ARE USEFUL IN GENERALLY ILLUSTRATING THE KIND OF INQUIRY THAT MUST BE UNDERTAKEN IN DETERMINING WHETHER A PARTICULAR ACTIVITY CONSTITUTES THE PRACTICE OF LAND SURVEYING. IN MY OPINION, THESE CASES ESTABLISH TWO IMPORTANT PRINCIPLES: (1) THE PARTICULAR LAND SURVEYING ACTIVITY IN QUESTION MUST BE CONSIDERED IN DETAIL AND THEN COMPARED WITH THE STATUTORY DEFINITION; AND (2) PRACTICES INVOLVING NEW TECHNOLOGIES AND TECHNIQUES MAY CONSTITUTE THE PRACTICE OF LAND SURVEYING IF THEY MEET THE STATUTORY DEFINITION.
A CALIFORNIA CASE, HILL V. KIRKWOOD, 326 P.2D 599 (CAL. APP. 1958), ILLUSTRATES THE FIRST PRINCIPLE. THERE, A GROUP OF TAX PAYERS FILED A SUIT TO ENJOIN STATE OFFICIALS FROM PAYING A COMPANY THAT HAD PERFORMED CERTAIN AERIAL SURVEYING WORK. THE TAXPAYERS ARGUED THAT THE WORK HAD BEEN PERFORMED ILLEGALLY BECAUSE THE COMPANY PERFORMING THE AERIAL SURVEY WAS NOT LICENSED AS A LAND SURVEYOR. FOR SEVERAL REASONS, THE HILL COURT REJECTED THE ARGUMENT.
FIRST, THE COURT CONSIDERED IN SOME DETAIL WHAT PARTICULAR ACTIVITIES HAD BEEN UNDERTAKEN BY THE SURVEYING COMPANY. IT APPROVED THE TRIAL COURT'S FINDING THAT THE CONTRACT FOR THE SURVEY AT ISSUE:
 ". . . REQUIRED DEFENDANT HYCON MANUFACTURING COMPANY TO FURNISH TOPOGRAPHIC MAPS PREPARED BY THE PROCESS KNOWN AS AERIAL PHOTOGRAMMETRY. THE MAPS ACTUALLY COMPILED AND FURNISHED BY IT WERE ENTIRELY PREPARED BY MEANS OF SAID PROCESS. THE PRINCIPAL PORTION OF SAID PROCESS CONSISTS OF AERIAL PHOTOGRAPHY OF THE TERRAIN TO BE MAPPED AND A MAP COMPILATION FROM SAID AERIAL PHOTOGRAPHS THROUGH THE USE OF PHOTOGRAMMETRIC PLOTTING MACHINERY. A MAP COMPILATION THROUGH THE USE OF SAID MACHINERY DOES NOT, AND IN THE CASE OF SAID CONTRACT DID NOT, REQUIRE THE MEASUREMENT OF ANY ANGLES OR THE APPLICATION OF PRINCIPLES OF TRIGONOMETRY EXCEPT TO THE EXTENT NECESSARY TO SUPPLY "GROUND CONTROL" DATA AS HEREINAFTER FOUND. IN THE COMPILATION OF SAID TOPOGRAPHIC MAPS, THE OPTICAL AND MECHANICAL DESIGN OF THE PHOTOGRAMMETRIC PLOTTING MACHINERY AND THE OPERATION OF OPTICAL AND MECHANICAL CONTROLS AND MECHANICAL TRACING DEVICES RENDERED UNNECESSARY THE CONVENTIONAL METHOD OF MEASURING LINES AND ANGLES AND OF APPLYING TRIGONOMETRIC PRINCIPLES.
. . . THE PHOTOGRAMMETRIC MAPPING REQUIRED UNDER SAID CONTRACT DID REQUIRE THE USE OF CONVENTIONAL LAND SURVEYING METHODS FOR THE ASCERTAINMENT OF "GROUND CONTROL" DATA, EXCEPT TO THE EXTENT TO WHICH SUCH DATA IS FURNISHED BY OR IS AVAILABLE FROM PREVIOUS RECOGNIZED SURVEYS, SUCH AS THOSE MADE BY THE UNITED STATES COAST AND GEODETIC SURVEY. AS REQUIRED BY SAID CONTRACT, DEFENDANT HYCON MANUFACTURING COMPANY ESTABLISHED CONTROL MONUMENTS AND BENCH MARKS BY CONVENTIONAL LAND SURVEYING METHODS AND PREPARED AND FURNISHED FIELD SURVEY NOTEBOOKS, CALCULATION AND TABULATION CONTROL DATA, AND CONTROL DIAGRAMS; BUT THE ACTIVITIES AND OPERATION OF HYCON MANUFACTURING COMPANY NECESSARY TO PERFORM SUCH WORK WERE AND ARE AN INTEGRAL AND NECESSARY PART OF THE "GROUND CONTROL" PHASE OF PREPARING TOPOGRAPHIC MAPS FROM AERIAL PHOTOGRAPHS THROUGH PHOTOGRAMMETRY; . . . ALL SUCH GROUND CONTROL WORK WAS EXCLUSIVELY FOR PHOTOGRAMMETRY AND DID NOT INVOLVE OR REQUIRE THE DETERMINATION OF ANY PROPERTY LINE. "326 P.2D AT 601.
THE HILL COURT THEN COMPARED THESE ACTIVITIES TO THE COMPONENTS OF THE PRACTICE OF LAND SURVEYING SET FORTH IN THE RELEVANT CALIFORNIA STATUTE. IT FOUND THAT THE ONLY ASPECT OF THE COMPANY'S ACTIVITIES THAT INVOLVED LAND SURVEYING, AS STATUTORILY DEFINED, WAS "GROUND CONTROL WORK" DONE AS PART OF THE PRODUCTION OF AERIAL PHOTOGRAPHS AND PHOTOGRAMMETRY. THE COURT CONCLUDED THAT THE GROUND CONTROL WORK WAS COVERED BY AN EXCEPTION TO THE CALIFORNIA DEFINITION OF LAND SURVEYING, WHICH STATED:
 "SURVEYS, MADE EXCLUSIVELY FOR GEOLOGICAL OR LANDSCAPING PURPOSES OR AERIAL PHOTOGRAPH OR PHOTOGRAMMETRY AND NOT INVOLVING THE DETERMINATION OF ANY PROPERTY LINE, DO NOT CONSTITUTE SURVEYING WITHIN THE MEANING OF THIS CHAPTER."
IN AERO SERVICE CORP. V. BENSON, 374 P.2D 277 (IDAHO 1962), THE SUPREME COURT OF IDAHO REACHED A SIMILAR CONCLUSION. IT FOUND THAT AERIAL PHOTOGRAPHY AND PHOTOGRAMMETRY DID NOT CONSTITUTE LAND SURVEYING, AND IT REACHED THIS CONCLUSION BY CONSIDERING THE LANGUAGE OF THE RELEVANT IDAHO STATUTE. 374 P.2D AT 282. IN MY OPINION, HILL AND BENSON DEMONSTRATE THAT, IN ASSESSING LAND SURVEYING PRACTICES, ONE MUST CLOSELY SCRUTINIZE THE ACTIVITY IN QUESTION AND COMPARE IT TO EACH ASPECT OF THE LAND SURVEYING STATUTE AT ISSUE.
AS TO THE SECOND GENERAL PRINCIPLE (ALLOWING APPLICATION OF DEFINITIONS OF LAND SURVEYING TO NEW TECHNOLOGIES), A LINE OF FEDERAL CASES INVOLVING TARIFF LAWS IS ILLUSTRATIVE. FEDERAL LAWS PLACE HIGHER TARIFFS ON "SURVEYING INSTRUMENTS" THAN ON CERTAIN OTHER ARTICLES. AS A RESULT, A NUMBER OF INDIVIDUALS AND COMPANIES HAVE CHALLENGED PARTICULAR ASSESSMENTS, ARGUING THAT PARTICULAR ARTICLES WERE NOT SURVEYING INSTRUMENTS. COURTS CONSIDERING THESE CHALLENGES HAVE INTERPRETED THE TERM "SURVEYING" TO INCLUDE DEVELOPING TECHNOLOGIES.
FOR EXAMPLE, GEHRIQ. HOBAN CO. V. UNITED STATES, 293 F. SUPP. 433 (CUST.CT.1968), THE UNITED STATES CUSTOMS COURT DETERMINED THAT AN INSTRUMENT KNOWN AS A "HYDRODIST" THAT UTILIZED RADIO MICROWAVES TO MEASURE DISTANCES AND THAT WAS DESIGNED PRIMARILY FOR USE ON SMALL BOATS CONSTITUTED A "SURVEYING INSTRUMENT" UNDER THE TARIFF LAWS. THE COURT REASONED THAT "THE TERM 'SURVEYING INSTRUMENTS' IS NOT LIMITED TO THE TRADITIONAL OR CONVENTIONAL ONES, BUT . . . INCLUDES INSTRUMENTS USING MODERN TECHNOLOGY AND DEVELOPED FOR SPECIAL TYPES OF SURVEYING." 293 F. SUPP. AT 439. AS TO THE HYDRODIST AT ISSUE, THE COURT SAID:
 "THE FUNCTION OF THE MERCHANDISE IN THE INSTANT CASE IS TO MEASURE DISTANCES THROUGH THE USE OF MICROWAVES. THIS IS A SURVEYING FUNCTION, AND THE AUTHORITIES ARE IN AGREEMENT THAT SURVEYING MAY BE DONE BY ELECTRONIC METHODS." 293 F. SUPP. AT 440.
SIMILARLY, SCHLUMBERQER WELL SURVEYING CORP. V. UNITED STATES, 54 C.C.P.A 37 (C.C.P.A. 1967), THE COURT CONCLUDED THAT A POTECLINOMETER CARTRIDGE USED ALONG WITH A DIPMETER TO DETERMINE THE TILT OF A SUBSURFACE STAKE USED IN OIL EXPLORATION CONSTITUTED A "SURVEYING INSTRUMENT" UNDER THE APPLICABLE LAW. IN REACHING THIS CONCLUSION, THE COURT CONSIDERED THE FUNCTION OF THE SUBJECT CARTRIDGE IN SOME DETAIL, NOTING THAT:
 "THE RECORD ADMITS OF NO DOUBT THAT, AS AND WHEN USED FOR ITS INTENDED PURPOSE, THE CARTRIDGE IS COMBINED WITH THE DIP METER SONDE AND THE COMBINATION IS SUSPENDED IN AN OIL WELL DRILL HOLE. THE PURPOSE AND FUNCTION OF THE CARTRIDGE IS TO INDICATE THE ORIENTATION OF THE DIP METER SONDE. THE CARTRIDGE ACCOMPLISHES THIS PURPOSE BY MEASURING, IN TERMS OF ANGLES, THE DIRECTION IN WHICH THE FRONT OR REFERENCE SIDE OF THE CARTRIDGE IS FACING RELATIVE TO THE NORTH-SOUTH DIRECTION, THE DEGREE WHICH THE CARTRIDGE IS TILTED FROM THE VERTICAL, AND THE DIRECTION WHICH THE FRONT OF THE CARTRIDGE MAKES WITH RESPECT TO THE DIRECTION WHICH THE DEVIATION OR TILT WILL TAKE."
CASES LIKE GEHRIQ AND SCHLUMBERQER INDICATE THAT NEW TECHNOLOGIES MAY BE INCLUDED WITHIN THE DEFINITION OF "THE PRACTICE OF LAND SURVEYING". OF COURSE, IN OKLAHOMA, WHETHER THE USE OF A PARTICULAR TECHNOLOGY CONSTITUTES THE PRACTICE OF LAND SURVEYING DEPENDS UPON WHETHER THE NEW TECHNOLOGY INVOLVES THE THREE COMPONENTS UNDER SECTION 475.2(7) THAT I HAVE DISCUSSED ABOVE.
IN SUMMARY THEN, I THINK THAT A COMPONENT APPROACH BASED ON THE LANGUAGE SET FORTH IN 59 O.S. 475.2(7) PROVIDES THE MOST USEFUL GUIDE TO DETERMINE WHAT ACTIVITIES CONSTITUTE THE PRACTICE OF LAND SURVEYING. IN ADDITION, THE PRACTICE OF LAND SURVEYING MAY INCLUDE THE USE OF NEW METHODS AND TECHNOLOGIES IF THESE METHODS AND TECHNIQUES INVOLVE THE THREE STATUTORY COMPONENTS.
(RABINDRANATH RAMANA)